UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

A & M WARSHAW PLUMBING & HEATING, INC. and A & M WARSHAW SERVICES LLC d/b/a A&M Warshaw Fire Protection,

　　　　　　　　　　Plaintiffs,

　　　　　　v.

MOUNT VERNON FIRE INSURANCE COMPANY,

　　　　　　　　　　Defendant.

---

No. 24-cv-5430 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

　　Plaintiffs A & M Warshaw Plumbing & Heating, Inc. ("A&M Plumbing") and A & M Warshaw Services LLC ("A&M Fire") bring this insurance coverage action against Mount Vernon Fire Insurance Company ("Mount Vernon").  Plaintiffs seek a declaration that Mount Vernon is contractually obligated to defend and indemnify them against legal claims they face in New York State court, as well as damages resulting from Mount Vernon's refusal to defend and indemnify them against those lawsuits.  Mount Vernon now moves for judgment on the pleadings on three of Plaintiffs' claims:  breach of the implied covenant of good faith and fair dealing, punitive damages, and attorneys' fees and expenses incurred in bringing this case.  For the reasons that follow, the motion is granted.

## BACKGROUND

　　Plaintiffs A&M Plumbing and A&M Fire (together, "A&M Warshaw") are two affiliated companies that offer plumbing and fire protection services.  *See* Dkt. 1-1 (Compl.) ¶¶ 1–4.  A&M Fire and A&M Plumbing separately took out insurance policies with Mount Vernon to insure themselves against lawsuits brought under the Fair Labor Standards Act ("FLSA") and similar

wage laws. As relevant here, both policies included identical language stating that Mount Vernon would defend and indemnify A&M Plumbing and A&M Fire against "[c]laims first made against the[m] . . . for any actual or alleged violation of the federal Fair Labor Standards Act, any amendments thereto, or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act." *Id.* ¶ 9 (A&M Plumbing policy); *Id.* ¶ 14 (A&M Fire policy).

In January 2024, two laborers filed a class action complaint against A&M Plumbing in New York State court, alleging that A&M Plumbing had failed to pay them their full wages in breach of a public works contract to restore buildings in Brooklyn. *Id.* ¶ 17. A&M Plumbing notified Mount Vernon of the lawsuit and requested that it defend and indemnify it against the suit pursuant to its insurance policy (the "Plumbing Policy"). *Id.* ¶ 21. Mount Vernon refused to cover the claim, however, explaining that it was brought pursuant to a "contract" and "d[id] not involve an alleged violation of the FLSA or any similar . . . law regulating minimum wage, working hours, overtime, child labor or record keeping." *Id.* Ex. C at 1–2.

A few weeks later, in February 2024, the plaintiffs filed an amended complaint that added A&M Fire as a defendant. *Id.* ¶ 26. This prompted A&M Fire to also seek coverage from Mount Vernon under its own insurance policy (the "Fire Policy"). *Id.* ¶ 33. Mount Vernon denied that claim as well, again citing the fact that the policy language covered only claims for alleged violations of the FLSA and similar laws. *Id.* ¶ 34.

The next month, the class action plaintiffs amended their complaint again. While the prior complaints did not mention any labor laws, this new complaint did: it alleged that that the public works contract "contained a material term" that required "each laborer" to "be paid wages" "in

2

accordance with [New York] Labor Law § 220(3)(a)." *Id.* Ex. H ¶ 24. As relevant here, NYLL § 220(3)(a) requires that laborers on public works contracts be paid "not less than the prevailing rate of wages," and mandates that these contracts "shall contain a provision" requiring payment of those wages. N.Y. Lab. Law § 220(3)(a).

Invoking the second amended complaint's language about NYLL § 220(3)(a), A&M Warshaw again reported the complaint to Mount Vernon and requested coverage against the lawsuit. *Id.* ¶ 46. Mount Vernon denied that request as well. Its agent explained in an email that the complaint asserted "breach of contract for failure to pay the prevailing wage rate," which was not an "allegation[] of a local or state law similar to the FLSA that regulates minimum wage, working hours, overtime, child labor, or record keeping." *Id.* Ex. I.

A&M Warshaw then filed this insurance coverage action against Mount Vernon in New York State court in May 2024. The complaint sought various remedies, including a declaration that Mount Vernon was obligated to defend and indemnify A&M Warshaw against the class action, as well as punitive damages and attorneys' fees incurred in filing this action.

Mount Vernon removed the case to federal court in July 2024, and filed the instant motion for judgment on the pleadings the following month. The Court heard oral argument on January 6, 2025.

## LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks omitted). "To survive a Rule 12(c) motion, the plaintiff's complaint must contain sufficient factual matter,

3

accepted as true, to state a claim to relief that is plausible on its face." *Id.* (alterations and internal quotation marks omitted).

## DISCUSSION

Mount Vernon seeks judgment on the pleadings on three of A&M Warshaw's claims: breach of the implied covenant of good faith and fair dealing, punitive damages, and attorneys' fees and expenses incurred in prosecuting this action.

### I. Breach of Implied Covenant of Good Faith and Fair Dealing

Mount Vernon first asserts that A&M Warshaw's claims for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its other claims for breach of contract. According to Mount Vernon, these claims are all premised on the same conduct—that it refused to defend and indemnify A&M Warshaw—and seek the same damages. A&M Warshaw disputes this characterization, arguing that its implied covenant claims are distinct because they allege that Mount Vernon denied coverage "multiple" times in "bad faith." A&M Opp. at 12.

Under New York law, every contract comes with an implicit covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 135 (2002) (internal quotation marks omitted). In short, the implied covenant covers "any promises that a reasonable promisee would understand to be included" in a contract, even if those promises are not stated explicitly. *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). In insurance contracts, for instance, "the implied covenant of good faith and fair dealing means that the insurer must investigate claims for coverage in good faith, must not manufacture factually incorrect reasons to deny insurance coverage, must not deviate from its own practices or from industry practices, and must not act with 'gross disregard' of the insured's interests." *E. Ramapo*

*Cent. Sch. Dist. v. N.Y. Schs. Ins. Reciprocal*, 158 N.Y.S.3d 173, 177–78 (2d Dep't 2021) (internal quotation marks omitted).

But while this covenant is implicit in every contract, plaintiffs may not bring these claims in every case. Under New York law, a plaintiff may not bring a claim for breach of the implied covenant when it *also* brings a claim for breach of contract premised on the same conduct. In other words, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). This means that a plaintiff can bring both claims only if they are premised on "different conduct on the part of the defendant and seek different categories and/or types of damages." *E. Ramapo Cent. Sch. Dist.*, 158 N.Y.S.3d at 178–79; *see also Hawthorne Grp., LLC v. RRE Ventures*, 776 N.Y.S.2d 273, 276 (1st Dep't 2004) ("A cause of action for breach of the implied duty of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of the contract." (internal quotation marks omitted)).

This rule bars A&M Warshaw's claims for breach of the implied covenant here. Put simply, these claims assert the same conduct as A&M Warshaw's breach-of-contract claims: that Mount Vernon failed to defend and indemnify A&M Warshaw in breach of their insurance agreements. *Compare* Compl. ¶¶ 98–99 (breach-of-contract claim alleging that Mount Vernon breached its "duty to defend and . . . indemnify" A&M Warshaw), *with id.* ¶ 106 (breach-of-implied-covenant claim alleging that Mount Vernon "fail[ed] and refus[ed] to assume the duty to defend . . . and indemnify" by "mischaracterizing" the policy language and "disregarding" facts). The only possible daylight between the two claims is that A&M Warshaw accuses Mount Vernon of not only denying its claims but doing so in "bad faith," and in a "knowing[] or reckless[]"

5

manner. *Id.* ¶ 165. But courts have already rejected this type of argument: "conclusory references to good and bad faith conduct" cannot save an implied-covenant claim when it is premised on a breach of the underlying agreement, as is the case here. *Polcom USA, LLC v. Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 298 (S.D.N.Y. 2021); *see also Jujamcyn Theaters LLC v. Fed. Ins. Co.*, 659 F. Supp. 3d 372, 379–80 (S.D.N.Y. 2023) (dismissing as duplicative implied-covenant claim that alleged insurer "knowingly and recklessly . . . den[ied] . . . coverage on frivolous grounds"). So even if A&M Warshaw uses stronger language like "bad faith" to describe its implied-covenant claims, those claims still "address[es] the same ultimate grievance" as its contract claims, namely that Mount Vernon "fail[e]d to comply with the[ir] agreement[s]." *County of Orange v. Travelers Indem. Co.*, No. 13-cv-6790 (NSR), 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014).

This duplication is confirmed by the fact that A&M Warshaw seeks the same damages—money spent defending itself against the underlying suit—on both claims. *See* Compl. at 30–31 (seeking reimbursement of its expenses defending the underlying action without identifying any separate harm that flowed from breach of the implied covenant). That distinguishes this case from others cited by A&M Warshaw in which plaintiffs pled different damages on their two claims. *See Rockefeller Univ. v. Aetna Cas. & Sur. Co.*, 217 N.Y.S.3d 562, 562 (1st Dep't 2024). At bottom, A&M Warshaw's breach-of-implied covenant claim seeks the same damages for the same conduct as its breach of contract claim, so it must be dismissed as duplicative.

**II.    Punitive Damages**

Mount Vernon also moves to dismiss A&M Warshaw's demand for punitive damages, which it seeks on its claims for breach of contract. Under New York law, punitive damages are available on contract claims only in "limited circumstances." *N.Y. Univ.*, 87 N.Y.2d at 315. To state a claim for these damages, the plaintiff must allege that (1) defendant's conduct is "actionable

6

as an independent tort," (2) the tortious conduct was "egregious," (3) the egregious conduct was directed at the plaintiff, and (4) the egregious conduct was "part of a pattern directed at the public generally." *Id.* at 316.

A&M Warshaw fails to plead two of these elements here. First, it does not allege that Mount Vernon committed a tort independent from breach of contract. "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *Id.* In other words, the plaintiff must plead tortious conduct beyond a breach of contract, such as fraudulent inducement or "conduct outside the contract but intended to defeat the contract." *Id.* A&M Warshaw points to no such independent tort here. At best, it alleges that Mount Vernon denied it coverage "recklessly" and in "bad faith." Compl. ¶ 106; *see also* A&M Opp. at 17. But "there is no separate tort for bad faith refusal to comply with an insurance contract" under New York law. *Paterra v. Nationwide Mut. Fire Ins. Co.* 831 N.Y.S.2d 468, 470 (2d Dep't 2007). Here, A&M Warshaw "is merely seeking to enforce its bargain," and plausibly asserts only a contract claim, not an independent tort that could lead to punitive damages. *N.Y. Univ.*, 87 N.Y.2d at 316.

Second, A&M Warshaw also fails to allege that Mount Vernon's conduct was "part of a pattern directed at the public generally." *Id.* To the contrary, A&M Warshaw asserts only that Mount Vernon denied its requests for defense and indemnity against the underlying class action in state court. There are no allegations that Mount Vernon engaged in similar conduct with respect to any of its other customers, let alone the public more generally. *See Johnson v. Allstate Ins. Co.*, 823 N.Y.S.2d 415, 416 (2d Dep't 2006) (dismissing punitive damages claim when no pattern alleged). A&M Warshaw's claim for punitive damages fails on this ground as well.

### III. Attorneys' Fees and Expenses

Mount Vernon next moves to dismiss A&M Warshaw's claim for the attorneys' fees and expenses it incurred in bringing this action. Mount Vernon argues that, under New York law, insured parties are typically barred from recovering costs associated with bringing an insurance coverage action against their insurer. A&M Warshaw responds that it may still recover those fees here because Mount Vernon prompted this suit by first putting A&M Warshaw in a defensive posture, and by denying its coverage requests in bad faith.

As the parties both recognize, New York law generally does not permit insured parties to recover attorneys' fees and expenses when it sues its insurer to enforce their insurance agreement. *See Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979). There are two exceptions to this rule, however. First, the insured party can recover these fees if it "has been cast in a defensive posture by legal steps" taken by the insurer, such as where the insurer first files a declaratory judgment action that disclaims coverage. *Id.* Second, the insured party may also recover these fees when it can establish that the insurer denied coverage in "bad faith." *Sukup v. State*, 19 N.Y.2d 519, 522 (1967).

The Court agrees with Mount Vernon that neither of these exceptions applies here.

#### A. Defensive-Posture Exception

As noted, New York law generally bars insured parties from recovering legal fees when they bring suit against their insurer to force the insurer to cover an insurance claim. *See Mighty Midgets, Inc.*, 47 N.Y.2d at 21. One exception to this rule applies when the insured party has been cast in a "defensive posture by legal steps" first taken by the insurer. *Id.* For instance, if the insurer files a declaratory judgment action seeking a declaration that it has no obligation to cover the insured's claim, then the insured may recover attorneys' fees incurred defending that suit. *See*

8

*Brown v. U.S. Fid. & Guar. Co.*, 361 N.Y.S.2d 232, 234 (3d Dep't 1974) ("An insured is entitled to recover the expenses of defending a declaratory judgment [b]rought as a result of an insurer's breach of its obligation to defend." (internal quotation marks omitted)). But if the insured party is the first one to take legal action, such as by filing its own declaratory judgment suit, then it generally must cover its own fees in bringing that claim.

The rule set forth in *Mighty Midgets, Inc. v. Centennial Insurance Co.* bars A&M Warshaw's fee request here. A&M Warshaw brought this affirmative action on its own accord and was not prompted by any earlier "legal steps" taken by Mount Vernon. 47 N.Y.2d at 21. As detailed in the complaint, A&M Warshaw sent Mount Vernon several requests for coverage, which Mount Vernon denied in rejection letters and emails. *See* Compl. ¶¶ 21–52. At no point did Mount Vernon take any legal step akin to filing a declaratory judgment action, nor did it even signal that it might do so. *See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597–98 (2004). Because this suit was unprompted by any such actions by Mount Vernon, it is an "affirmative action" for which A&M Warshaw may not recover fees under New York law. *Mighty Midgets*, 47 N.Y.2d at 21.

A&M Warshaw offers several counterarguments, but none is persuasive. It first argues that Mount Vernon placed it in a "defensive posture" by repeatedly denying its claims for coverage, which forced A&M Warshaw to bring this action. A&M Opp. at 19. But denying requests for coverage—even repeatedly—is not a "legal step" under the *Mighty Midgets* rule. As courts applying this rule have recognized, a "legal step" is one "*tantamount* to a lawsuit," such as filing a counterclaim. *Estee Lauder v. OneBeacon Ins. Grp., LLC*, 918 N.Y.S.2d 825, 833 (N.Y. Sup. Ct. 2011) (emphasis added); *Hervochon v. Iona Coll.*, No. 14-cv-6017 (CS), 2019 WL 1375359, at *4 (S.D.N.Y. Mar. 27, 2019) (quoting *Estee Lauder*, 918 N.Y.S.2d at 833). So even when, as

9

here, an insurer denies coverage and "subsequent[ly] . . . reaffirm[s] the denial," that is still not a legal step that would allow the insured party to recover fees in an action it brings. *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-cv-4629 (LGS), 2024 WL 863468, at *2 (S.D.N.Y. Feb. 29, 2024).

To be sure, A&M Warshaw points to one somewhat recent decision in which an insured party was able to recover attorneys' fees after the insurer issued "sequential denials" of coverage, *Houston Casualty Co. v. Prosight Specialty Insurance Co.* 462 F. Supp. 3d 443, 452 (S.D.N.Y. 2020). But other courts in this District have persuasively distinguished *Houston Casualty* on the grounds that the insurer's denials of coverage there were not only repeated but also "based on an unreasonable interpretation of the policy." *Wentworth Grp. Inc. v. Evanston Ins. Co.*, No. 20-cv-6711, 2022 WL 909794, at *3 (S.D.N.Y. Mar. 29, 2022); *see also Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-cv-4629 (LGS) (SLC), 2023 WL 9603886, at *6 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2023 WL 863468 (S.D.N.Y. Feb. 29, 2024) (stating that, in contrast to *Houston Casualty*, the insurer's "denial was not based on an unreasonable interpretation of the policy." (alterations and internal quotation marks omitted)).[1] Even assuming Mount Vernon's interpretation of the policy language was incorrect, it was not unreasonable, as further discussed below. *See infra* Section III.B (explaining how reasonable parties could disagree over whether the policy language extends to suits asserting breach-of-contract claims as opposed to only wage-law claims).

A&M Warshaw next asserts that it can recover legal fees because they are "consequential damages" flowing from Mount Vernon's breach of its agreement to defend and indemnify A&M

---

[1] These courts have also distinguished *Houston Casualty* on the basis of other "unusual circumstances" present there, including "the insurer's denial of the duty to defend in its answer to the insured's third-party complaint" and its "filing of a counterclaim against the insured." *Match Grp.*, 2023 WL 9603886, at *6.

Warshaw. A&M Opp. at 20. According to this theory, *Mighty Midgets* does not bar recovery of legal fees when those fees are characterized as consequential damages, in that they were reasonably foreseeable to the contracting parties.

The problem with this argument is that it is merely wordplay: attorneys' fees are attorneys' fees no matter what label a plaintiff gives them, and repackaging them as "consequential damages" does nothing to sidestep the *Mighty Midgets* bar on their recovery. In fact, New York courts have repeatedly—and explicitly—rejected similar attempts by insureds to recover legal fees that were touted as "consequential damages." *See, e.g.*, *Santoro v. GEICO*, 986 N.Y.S.2d 572, 574 (2d Dep't 2014) ("[T]he only consequential damages asserted by the plaintiff are an attorney's fee and costs and disbursements resulting from this affirmative litigation, which are not recoverable." (citing *Mighty Midgets*, 47 N.Y.2d at 21)); *625 Ground Lessor LLC v. Cont'l Cas. Co.*, 17 N.Y.S.3d 26, 27 (1st Dep't 2015) ("Equally unavailing are plaintiffs' claims for consequential damages for attorneys' fees." (citing *Mighty Midgets*, 47 N.Y.2d at 12)). And even though recent decisions have allowed for recovery of consequential damages in affirmative insurance actions, *Mighty Midgets* still disallows recovery of legal fees as part of those damages. As the Second Department put it, "nothing in [our recent cases about consequential damages] alters the common-law rule that, absent a contractual or policy provision permitting recovery of an attorney fee, an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *Stein, LLC v. Laws. Title Ins. Corp.*, 953 N.Y.S.2d 303, 304 (2d Dep't 2012) (citing *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187 (2008), and *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200 (2008)).

### B. Bad-Faith Exception

A&M Warshaw also asserts that it can recover legal fees because Mount Vernon denied its claims in bad faith. *See* A&M Opp. at 21 (citing *FDIC v. Nat'l Surety Corp.*, 425 F. Supp. 200, 204 (E.D.N.Y. 1977)). This argument implicates another exception to the *Mighty Midgets* rule, which permits an insured party to recover attorneys' fees when its insurer denied coverage in "bad faith." *Sukup*, 19 N.Y.2d at 522.

This exception is easier stated than satisfied, however, as New York law maintains "a strong presumption . . . against a finding of bad faith liability by an insurer." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 616, 625 (2d Cir. 2001) (quoting *Sukup*, 19 N.Y.2d at 522). To overcome it, an insured must show more than mere error or disagreement—it must establish that the insurer's denial of coverage was so entirely without basis that "no reasonable carrier would, under the given facts, be expected to assert it." *Id.* (quoting *Sukup*, 19 N.Y.2d at 522). This stringent requirement means that even if the insurer is wrong about its coverage obligations, no bad faith exists when there was an "arguable difference of opinion" regarding the scope of coverage. *Liberty Surplus Ins. Corp. v. Segal Co.*, 420 F.3d 65, 70 (2d Cir. 2005) (quoting *Sukup*, 19 N.Y.2d at 522).

A&M Warshaw cannot clear this high bar here, because the policy language gave Mount Vernon a reasonable basis for denying coverage for the underlying class action. The relevant provisions required Mount Vernon to cover "*Claims . . . for any actual or alleged violation* of the federal Fair Labor Standards Act, any amendments thereto, or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act." Compl. ¶ 9 (Plumbing Policy; *id.* ¶ 14 (Fire Policy). According to Mount Vernon, this provision does not cover the class

12

action because that suit is for breaching a contract to pay prevailing wages, not for violating a wage law that regulates minimum wage, hours, overtime, recordkeeping, or other matters covered by the FLSA. A&M Warshaw disagrees, and argues that the class action is covered because it asserts that A&M Warshaw breached a provision of the contract that obligates it to pay wages according to a New York wage-and-hour law.

Even assuming that A&M Warshaw's reading might be correct, the policy language can reasonably support either interpretation. The key phrase—covering "[c]laims . . . for any actual or alleged violation" of wage-and-hour laws—does not clearly resolve whether a breach-of-contract claim predicated on a prevailing-wage-law violations qualifies. This ambiguity creates just the sort of "arguable difference of opinion" that precludes a finding of bad faith. *Liberty Surplus Inc.*, 420 F.3d at 70 (internal quotation marks omitted). Indeed, courts in this district have regularly dismissed claims of bad faith in similar circumstances, where insured parties offer only "conclusory assertions" that coverage denials amount to bad faith. *Fishberg v. State Farm Fire & Cas. Co.*, No. 20-cv-6664 (LJL), 2021 WL 3077478, at *8 (S.D.N.Y. July 20, 2021); *Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-9864 (NSR), 2022 WL 94884, at *3 (S.D.N.Y. Jan. 10, 2022) ("conclusory allegations").

Beyond the policy language, A&M Warshaw fails to allege any other facts suggesting bad faith on Mount Vernon's part. *See, e.g.*, *Fishberg*, 2021 WL 3077478, at *8 (noting that plaintiff could plead "facts known to [d]efendant that would clearly establish coverage"). Between the lack of such allegations and the unsettled nature of the policy language, A&M Warshaw has failed to plead a plausible case of bad faith and cannot recover legal fees on that basis.

## IV. Leave to Replead

Finally, A&M Warshaw requests leave to replead its dismissed claims. *See* A&M Opp. at 22. Mount Vernon opposes that request on the ground that repleading would be futile. *See* Dkt. 22 ("Mount Vernon Reply") at 9. The Court agrees with A&M Warshaw that it may replead these claims. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Nor can the Court say for certain that A&M Warshaw will not be able to add new allegations that differentiate its contract and implied covenant claims, or that establish bad faith or a basis for punitive damages. *See, e.g.*, *Rockefeller Univ.*, 217 N.Y.S. 3d at 563 (discussing how plaintiff "sufficiently alleged" facts in support of its breach-of-implied-covenant claim). The Court thus grants A&M Warshaw's request to replead so long as it has a good-faith basis to do so.

## CONCLUSION

For the foregoing reasons, Mount Vernon's partial motion for judgment on the pleadings is granted. To the extent A&M Warshaw wishes to replead its dismissed claims, it shall have thirty days to do so. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 18.

SO ORDERED.

Dated:  January 10, 2025
    New York, New York

_____
Ronnie Abrams
United States District Judge